**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ARMANDO CRUZ-HERNANDEZ,**

      **Petitioner,**

**v.**                                                                    **CASE NO. 8:23-cv-1665-CEH-TGW**

**SECRETARY, Department of Corrections,**

      **Respondent.**

_____/

**O R D E R**

Armando Cruz-Hernandez filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 along with a memorandum of law. (Docs. 1, 2). Respondent filed a response opposing the petition along with supporting exhibits. (Docs. 9; Doc. 10, Appendix). Cruz-Hernandez replied to Respondent's response. (Doc. 14). Upon consideration, Cruz-Hernandez is entitled to no relief because his claims lack merit.

**I. Background and Procedural History**

Cruz-Hernandez was charged by a felony information in the Twelfth Judicial Circuit, in and for Manatee County, Florida, with seven felony counts: one count of Sexual Battery Upon Person 12 or Older but Less than 18 by a Person in Familial/Custodial Authority, a Felony Punishable by Life, in violation of section 794.011(8)(b), Florida Statutes (Count 1); Lewd or Lascivious Molestation by a Person Over 18 Years of Age Upon a Child 12 Years of Age or Older but Less than 16 Years

of Age, a Life Felony, in violation of sections 800.04(5)(a) and (c)2, Florida Statutes (Count 2); Lewd or Lascivious Molestation by a Person 18 Years of Age or Older Upon a Child Less than 12 Years of Age, a Life Felony, in violation of section 800.04(5)(b), Florida Statutes (Count 3); Sexual Battery by a Person Eighteen Years of Age or Older Upon a Child Less than 12 Years of Age, a Capital Felony, in violation of section 794.011(2)(a), Florida Statutes (Counts 4, 5, and 7); and Lewd or Lascivious Molestation by Person 18 Years of Age or Older Upon a Child Less than 12 Years of Age, a Life Felony, in violation of section 800.04(5)(b), Florida Statutes (Count 6). (Ex. 1 at 26–29).[1] Cruz-Hernandez was in a relationship with the victims' mother. (Ex. 3 at 1).

Cruz-Hernandez was tried before a jury and a guilty verdict was delivered on each of the seven counts. (Ex. 1a; Ex. 1 at 337–47). He was then sentenced to 15 years' imprisonment on Count 2, and, as to Counts 1, 3, 4, 5, 6, and 7, to a term of natural life. (Ex. 1 at 352–53). The court issued an order designating Cruz-Hernandez as a sexual predator. (Ex. 1 at 375). Cruz-Hernandez pursued a direct appeal. (*Id.* at 367).

**A. Direct Appeal of Judgment**

Cruz-Hernandez's counsel filed an initial brief, raising seven grounds for relief; four of which, Grounds 2, 4, 5, and 7, are relevant to his federal habeas petition (Ex. 2). He argued in Ground 2: The lower court erred in permitting the State to portray

---

[1]  Unless otherwise cited, the exhibits referred to in this Order can be found in the appendix to docket entry 10.

him as some sort of "Monster" who treated the complainants as slaves and otherwise engaged in character assassination; Ground 4: The lower court erred in permitting the child protection team interviewer to give an unqualified medical opinion during her testimony; Ground 5: The lower court erred in permitting the child protection team interviewer to give her opinion on the reasons a child may not disclose abuse at the time the abuse occurs; Ground 6: The cumulative effect of the many errors committed by the trial counsel constitutes ineffective assistance of counsel. (*Id.* at 19–30; 36 –39; 40–41).

After the State filed its answer brief (Ex. 3), Cruz-Hernandez requested oral argument (Ex. 4), and his request was granted (Ex. 5). After hearing oral argument, the Florida Second  District Court of Appeal issued its opinion affirming, per curiam, Cruz-Hernandez's judgment of conviction and sentence. *Cruz-Hernandez v. State*, 278 So. 3d 591 (Table) (Fla. 2d DCA 2018). (Ex. 007).

**B.  Motion for Postconviction Relief and Non-Summary Appeal**

Cruz-Hernandez then filed a pro se motion for post-conviction relief in the trial court, under Rule 3.850, Florida Rules of Criminal Procedure. He raised eight grounds for relief in the motion, only one of which (Ground Eight) is pertinent to his federal habeas petition. (Ex. 9 at 27–47). In Ground 8, Cruz-Hernandez argued that the cumulative effect of the many errors by his trial counsel (failing to consult with the defendant about the witnesses to be cross-examined) constitutes ineffective assistance of counsel. (*Id.* at 40–41).

In an amended Rule 3.850 motion, Cruz-Hernandez added three grounds for relief, only one of which (Ground 10) is relevant to his federal habeas petition. In Ground 10, he argued that his trial counsel rendered ineffective assistance by failing to tell him before the start of the trial that the victims' mother had stolen $4,500 from Cruz-Hernandez's bank account 166 days prior to the trial, thereby resulting in an unfair trial. (*Id.* at 124–39; 150–52). The court denied Grounds 1 through 7 and directed the State to respond to Grounds 8 through 11. (*Id.* at 180–212; 213–56). The State filed its response (*id.* at 257–70; 271–89), and Cruz-Hernandez filed a reply (*id.* at 390–405).

The post-conviction court summarily denied Grounds 8 and 9 but granted an evidentiary hearing on Grounds 10 and 11. (*Id.* at 406–15; 416–57). Cruz-Hernandez represented himself at the hearing. (*Id.* at 588–666). The court ultimately denied Grounds 10 and 11. (*Id.* at 573–76). Cruz appealed. (*Id.* at 577–78). The Second District Court of Appeal affirmed per curiam. *Cruz-Hernandez v. State*, 361 So. 3d 854 (Table) (Fla. 2d DCA 2023). (Ex. 14).

**C. Present Petition**

Cruz-Hernandez filed his 28 U.S.C. § 2254 petition for writ of habeas corpus by placing it in the hands of prison officials on July 8, 2023, and the Clerk of Court docketed it on July 24, 2023. (Doc. 1; Doc. 10, Ex. 16).[2] He raises three grounds of

---

[2]  Cruz-Hernandez had one year from the date on which his state court judgment of conviction became final to file his federal petition for writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). Respondent does not challenge the timeliness of Cruz-Hernandez's petition. (*See* Doc. 9 at 6).

trial court error and two grounds of ineffective assistance of trial counsel in the petition. (*See generally* Doc. 1).

## II.  Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). The AEDPA amended 28 U.S.C. § 2254 to create a highly deferential standard for federal court review of a state court adjudication. It states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

"The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim issues a reasoned and explanatory opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S.

Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision does not come with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192.

### III. Discussion[3]

#### A. Trial Court Errors

#### Ground One

In Ground One, Cruz-Hernandez claims that the trial court erred in allowing the prosecutor to portray him as some sort of monster who treated the victims as slaves and otherwise engaged in character assassination, violating his Sixth Amendment right to a fair trial. On direct appeal, he raised this ground as Ground Two. (Ex. 2 at 19–30). He contends that the State's elicitation of testimony, which he claims

---

[3] Respondent addresses the merits of Cruz-Hernandez's ground for habeas relief, but also argues that his claims are procedurally barred because he failed first to exhaust them in the state courts as they are framed in his federal habeas petition. A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The Court is not persuaded by Respondent's procedural bar arguments, as Cruz-Hernandez's state court claims arguably relied on federal cases employing constitutional analysis or State cases employing constitutional analysis, or alleged facts well within the mainstream of constitutional law. *See Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003) (citation omitted) (discussing the actions a petitioner can take which are significant to the determination as to whether a claim has been fairly presented to the state courts). Therefore, this Court's "Discussion" addresses only the merits of Cruz-Hernandez's claims.

characterized him as a monster, treating the victims like slaves or Cinderella, was inadmissible because it was not relevant to the allegations against him for sexual abuse. He argues that the testimony of how the victims were beaten or made to do more chores if they failed to participate in any of the sex acts with him was not relevant to prove or disprove a material fact at issue, but that its probative value was substantially outweighed by prejudice. (*Id.*).

Cruz-Hernandez cites the Supreme Court decision of *Michelson v. United States*, 335 U.S. 469 (1948), for the proposition that the State presented inadmissible character evidence to show he acted in conformity with that trait, in contravention of section 90.404, Florida Statutes (2017). *Michelson*, however, is inapplicable in this case because it involved a different consideration—whether the State improperly presented evidence of a prior arrest after the defendant opened the door to such testimony by putting his reputation in issue. 335 U.S. 470–87.

Further, the state court record before this Court establishes that Cruz-Hernandez's federal habeas claim is meritless. Evidence that the children were forced to do chores and were beaten by Cruz-Hernandez (*see* Ex. 1a at 234–35, 238 –39, 280, 284) was relevant to show his familial authority over them. This familial authority was relevant to the elements of Count 1 (*see* Ex. 1 at 26) and was also probative in explaining the victims' delays in reporting the abuse. (Ex. 1a at 234, 280). Section 90.401, Florida Statutes, provides "[r]elevant evidence is evidence tending to prove or disprove a material fact." That Cruz-Hernandez told the victims not to tell, made them do additional chores, and beat them, is relevant to the years of sexual abuse the child

victims endured, including Cruz-Hernandez's acts to conceal the abuse. Therefore, Ground One is denied as meritless.

### Grounds Two and Three

In Ground Two, Cruz-Hernandez claims that the trial court erred in allowing a witness to testify regarding the circumstances where a child victim of sexual abuse delays reporting the incident in order to bolster the victims' testimony and establish their credibility, thereby violating his Fifth, Sixth, and Fourteenth Amendment Rights to a fair trial and due process. (Doc. 2 at 4). In Ground Three, Cruz Hernandez argues that the trial court erred in allowing a witness to give an unqualified medical opinion during her trial testimony, violating his Fifth, Sixth, and Fourteenth Amendment rights to a fair trial and due process. Cruz-Hernandez raised these claims on direct appeal as Grounds Five and Four, respectively. (Ex. 002, at 37–39; 36–37).

Cruz-Hernandez cannot demonstrate that the state court's decision rejecting these claims was an unreasonable application of clearly established federal law or resulted in an unreasonable determination in light of the facts. Generally, federal courts "are not empowered to correct erroneous evidence rulings of state trial courts." *Boykins v. Wainwright,* 737 F.2d 1539, 1543 (11th Cir. 1984) (citations omitted). The error "must rise to the level of a denial of fundamental fairness." *Hall v. Wainwright,* 733 F.2d 766, 770 (11th Cir. 1984) (quotations and citations omitted). A denial of fundamental fairness occurs whenever the improper evidence "is material in the sense of a crucial, critical, highly significant factor." *Osborne v. Wainwright,* 720 F.2d 1237,

1238 (11th Cir. 1983). The evidence at issue in Cruz-Hernandez's claims does not rise to this level.

In Ground Two, Cruz-Hernandez contends that the trial court erred in permitting an interviewer from Child Protective Services to testify as to why victims do not disclose abuse at the time the abuse occurs (*see* Trial Testimony, Ex. 1a at 363–64). He also faults the court for permitting the lead detective on his case to provide similar testimony (*see id.* at 459–61). Cruz-Hernandez argues that the statements amounted to inadmissible expert testimony and that it was unreasonable for the state courts to reject his claim of error. (Doc. 2 at 4–6; Doc. 10, Ex. 2 at 37). He relies on *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998), which held that a trial court violates a defendant's due process rights by allowing expert testimony that vouches for a child victim's credibility, thereby invading the jury's role. However, the testimony at issue in Cruz-Hernandez's trial was admissible because it was relevant. 135 F.3d at 739. Section 90.401, Florida Statutes, provides "[r]elevant evidence is evidence tending to prove or disprove a material fact." And contrary to Cruz-Hernandez's assertion, the testimony from the child protection team interviewer was not analyzed under the expert framework because it addressed matters of personal knowledge and experience as a forensic interviewer. The testimony focused on the witness's experiences with the children she has interviewed, and the witness testified that she has conducted over 745 forensic interviews. (Ex. 1a at 359). The lead detective also testified about his experience with crime victims. He focused on his experiences with cases he had worked on as a law enforcement officer, and the witness testified that he

has been a detective working crimes against children for about six and a half years. (Ex. 1a at 433).

The trial court found the evidence was probative, and on direct appeal, Cruz-Hernandez's argument was rejected. The Second District Court of Appeal's affirmance ends the inquiry into whether the subject evidence was relevant and whether the probative value substantially outweighed any danger of unfair prejudice under state law. Applying the AEDPA's deferential standards, it is objectively reasonable to conclude that admission of the evidence regarding why child abuse victims might delay disclosure did not deprive Cruz-Hernandez of a fair trial.

As Respondent asserts, contrary to Cruz-Hernandez's characterization, the testimony of these witnesses did not require scientific or technical knowledge, but instead centered on their experience as professionals, who testified to facts within their personal knowledge, *i.e.*, that other children have delayed disclosure and the reasons given for that delay. Given the independent evidence that established Cruz-Hernandez's guilt beyond a reasonable doubt, it is objectively reasonable to find that the admission of testimony of the child protection team interviewer and case detective regarding their experience of why children of sexual abuse might delay reporting was not a crucial, critical, highly significant factor in Cruz-Hernandez's case. The state court's decision was not based on unreasonable factual determinations given the evidence before it. These findings are presumed correct under section 2254(d)(2), unless the presumption is rebutted by Cruz-Hernandez "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct.

11

1029, 1041, 154 L.Ed.2d 931 (2003). Cruz-Hernandez has not shown by clear and convincing evidence that the state court's determination was unreasonable or that it deprived him of a fair trial. Therefore, Ground Two is denied as meritless.

In Ground Three, Cruz-Hernandez claims that the trial court improperly admitted testimony from the child protection team interviewer and the lead detective on his case that Child Protective Services (CPS) and law enforcement generally do not request a medical evaluation unless the abuse occurred within 72 hours of the interview (*see* Ex. 1a at 361–63, 437–38). (*See* Doc. 2 at 6). He argues that the testimony required medical expertise beyond the witness's training, and such testimony was admissible only through the testimony of a qualified doctor or nurse practitioner. (*See* Ex. 2 at 36). He contends that the admission of the testimony violated his constitutional rights under the Sixth and Fourteenth Amendments. (*See* Doc. 2 at 6).

Following oral argument, the Second District Court of Appeal rejected Cruz-Hernandez's claim when it issued a silent affirmance. The appellate court could reasonably affirm the admission of this testimony. First, the court could have reasonably determined, as the State argued, that the error complained of did not reach the validity of the case, such that the court should find fundamental error. (Ex. 3 at 30, 39). Second, the appellate court could reasonably affirm the admission of this evidence because, contrary to Cruz-Hernandez's assertion, the witness was qualified to provide testimony on the matter.  There is nothing in the Florida evidence rules that precludes a lay witness from testifying about her past experience.  *See Douglas v. State*, 878 So. 2d

1246 (Fla. 2004) (admission of photographic evidence reviewed for an abuse of discretion).

The child protection team interviewer testified on direct examination, based on her experience as an interviewer, that Child Protective Services and law enforcement generally do not request a medical evaluation when the abuse occurred over 72 hours. She did not go into the medical reasons for this and only stated their procedure (Ex. 1a at 361–63). This information was within the witness's knowledge and, thus, admissible under section 90.604, Florida Statutes.

Moreover, as the State pointed out, any admission of objectionable evidence came during defense counsel's cross-examination of the child protection team interviewer. (Ex. 1a, at 375–76). The record shows that the defense at trial was that the victims lied, and had the investigators requested medical examination of the victims, it would have refuted the victims' version of events and exonerated Cruz-Hernandez. This defense was stated in the first paragraph of the defense's opening statement (and also relied upon in the closing argument). (*See* Ex. 1a at 211; 844–45).[4]

The trial court found the evidence probative, and on direct appeal, the Second District Court of Appeal rejected Cruz-Hernandez's claim that it was impermissible. The appellate court's silent affirmance ends the inquiry into whether the subject

---

[4]   A defendant cannot initiate an error and then seek reversal based on that error. The general rule that testimony beyond the expertise of a witness is not admissible is inapplicable where, as in this case, it is introduced by the defendant on cross-examination." *See Eberhard v. State*, 539 So. 2d 539, 539 (Fla. 1st DCA 1989).

evidence was relevant and whether the probative value substantially outweighed any danger of unfair prejudice under state law. Applying the AEDPA's deferential standards, it is objectively reasonable to conclude that admission of this opinion evidence did not deprive Cruz-Hernandez of a fair trial.

The evidence was properly admitted under section 90.604, Florida Statutes, and Cruz-Hernandez cannot show that the admission rendered his trial fundamentally unfair. Given the facts on record, Cruz-Hernandez fails to show that the appellate court's decision to affirm the admission of opinion testimony involved an unreasonable determination of the facts in light of the evidence. Therefore, Ground Three is denied as meritless.

## B. Ineffective Assistance of Counsel

In his remaining claims, Cruz-Hernandez asserts that his trial counsel failed to provide effective assistance, thereby prejudicing him. The two-part standard outlined in *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 2066, 80 L. Ed. 2d 674 (1984), governs claims of ineffective assistance of counsel. To make a successful claim, a defendant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. 466 U.S. at 687. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To succeed on an ineffective assistance claim, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. There is no reason for a court deciding an

14

ineffective assistance claim to address both components of the *Strickland* test if the defendant makes an insufficient showing on one. *Id.* at 697.

When reviewing a state court's adjudication on the merits of an ineffective assistance claim, federal courts must apply a "doubly" deferential standard. *See Richter*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 689). Federal habeas courts assessing claims of ineffective assistance previously adjudicated in state court, "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Id.*

### Ground Four

In Ground Four, Cruz-Hernandez claims that the cumulative effect of the many errors committed by his trial counsel – "failing to consult with the petitioner about the witness to be cross-examined and failing to investigate before trial properly – constitutes ineffective assistance of counsel violating his Sixth Amendment right to a fair trial under the United States Constitution." (Doc. 2 at 7–9).

Cruz-Hernandez raised the substance of his claim as Ground Eight in his Rule 3.850 motion for post-conviction relief (*see* Ex. 9 at 40–41; 120–23) and on collateral appeal (*see* Ex. 11 at 17–30). He asserts that his counsel failed to obtain transcripts of the victims' Child Protective Services interviews until a week before trial. He asserts that the video interviews of the victims violated his confrontation rights per *Crawford v. Washington*, 541 U.S. 36 (2004). He faults counsel for not consulting him, not reviewing the statements made against him, nor informing him about the context of

15

the video statements. And he argues that counsel came to trial blind as to the victims' statements (*See* Ex. 9 at 40–41). He asserts he was deprived of his right to confront and cross-examine the victims with the "lies they told the CPT investigator." (Doc. 2 at 8). He contends that reasonably competent counsel would have shown him the child protection team interviews before trial so he could know exactly what acts he was accused of committing. (*Id.*).

The trial court summarily rejected Cruz-Hernandez's claim, finding that no evidentiary development of Cruz-Hernandez's claim in Ground Four was warranted. (*See* Ex. 9 at 408–11). "[A] defendant is entitled to an evidentiary hearing on a post-conviction relief motion unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally insufficient." *Freeman v. State*, 761 So. 2d 1055, 1061 (Fla. 2000). Cruz-Hernandez appealed the adverse ruling, and the Second District Court of Appeal issued a silent affirmance. Deference is owed to the state courts' silent affirmance. The appellate court could reasonably affirm the summary denial of this ground because the record refuted Cruz-Hernandez's claim. The state appellate court's adjudication of this ground was not contrary to or an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. A review of the record confirms that the record indeed supports the State court's findings.

First, as the post-conviction court found, Cruz-Hernandez could not demonstrate deficient performance or prejudice under *Strickland* with respect to the CPS's transcripts claim. (*See* Ex. 9 at 408–11). The record establishes that defense

16

counsel had the transcripts of the child protection team's interviews on the first day of trial, and Cruz-Hernandez failed to show that his counsel was constitutionally obligated to obtain them earlier to be reasonably effective. (*See* Ex. 1a at 3, 11–13; Ex. 9 at 409–10). The post-conviction court determined that Cruz-Hernandez failed to demonstrate how his counsel's alleged failure to obtain the transcripts any sooner resulted in prejudice under *Strickland*. (*See* Ex. 9 at 409). He did not show that his counsel was unfamiliar with the contents of the interviews. (*See id.*) The recordings were available and could have been viewed by counsel, even in the absence of the transcripts. (*See id.*). Additionally, the trial proceedings reflect that counsel was familiar with the contents of the interviews on day one of trial. (*See id.*).

The post-conviction court also rejected Cruz-Hernandez's claim that his counsel provided deficient performance by failing to review the child protection team's interviews with him before trial. (*See id.* at 410–11). Cruz-Hernandez alleged that the victims' statements contained inconsistencies as to where the sexual abuse occurred, demonstrating the abuse could not have taken place as alleged. (*Id.* at 409–10). He alleged that his counsel came to trial blind about these inconsistencies. (*Id.*) However, the court found that the record demonstrated that counsel not only was familiar with the inconsistencies in the forensic interviews but also highlighted them before the jury (Ex. 9 at 445–52). The record shows that defense counsel was very familiar with the disclosures in the child protection team's interviews and the statements made by each victim during their depositions, and was able to adequately impeach them with any prior inconsistent statements. (*See* Ex. 1a at 297–98; 307, 469). This was clear from the

defense counsel's closing arguments before the jury. (*See* Ex. 1a at 839–40; 842–43; 845–46; 853–54). Thus, counsel did not enter the trial blind to the inconsistencies.

The post-conviction court also found that even if there was some deficiency in failing to show the forensic interviews to Cruz-Hernandez before trial, Cruz-Hernandez could not demonstrate a reasonable probability of a different outcome, but for counsel's omission. (*See* Ex. 9 at 411). The record shows that defense counsel not only argued the inconsistencies in the victims' dates and locations but also highlighted the perceived bias of the parties and the lack of physical corroborating evidence. (*Id.* at 410–11). Therefore, even if counsel failed to show Cruz-Hernandez the child protection team's videos or the transcripts before trial, he was in no way prejudiced because counsel was able to impeach the victims' credibility adequately. Moreover, the videos were admitted into evidence; therefore, the jury was able to see them, in their entirety, as well as hear the in-court testimony of the victims, thereby potentially eliminating the need to confront the children directly. (*See* Ex. 1a at 214).

Additionally, the Court notes that although Cruz-Hernandez claims he would have been better prepared to answer the charges against him had he been shown the forensic interviews before trial and discovered the victims' alleged inconsistent statements, the record shows that when he took the stand to testify, he failed to address any impossibility of the abuse occurring at multiple locations during his testimony. Rather, he chose to deny that any abuse occurred anywhere. (Ex. 1a at 356–89). Thus, Cruz-Hernandez fails to demonstrate that the state court's application of the *Strickland*

18

standard was unreasonable. *Richter*, 562 U.S. at 101. Ground Four is, therefore, denied as meritless.

### Ground Five

Finally, in Ground Five, Cruz-Hernandez claims that his trial counsel rendered ineffective assistance when he learned that the victims' mother had stolen $4,500 from Cruz-Hernandez's bank account 166 days before trial and failed to inform Cruz-Hernandez of the theft, and failed to investigate it. (Doc. 2 at 11–12). Cruz-Hernandez raised his claim as Ground 10 in his amended Rule 3.850 motion for post-conviction relief. (*See* Ex. 9 at 130–34). The crux of Cruz-Hernandez's claim is that had his counsel advised him of the theft sooner and properly investigated it, counsel would have learned that the victims' mother lacked any lawful access to the money. (*See id.*). He asserts that counsel could have shown the jury her criminal motives. (*See id.*). Cruz-Hernandez argues that he was deprived of the opportunity to show the jury the victims' mother's evil scheme to falsely accuse him of these crimes to steal his money and property. (*See id.*).

After the State was directed to respond to this claim and provided its response (*id.* at 265–68), Cruz-Hernandez was afforded a limited evidentiary hearing (*id.* at 413; 588–666). He represented himself at the hearing and argued that his counsel failed to challenge the victims' mother with text messages and other documents to show she did not have legal access to the $4,500 when she took it from his account. (*Id.* at 658–

59).[5] Cruz-Hernandez asserts that had his counsel acted as proposed, the motives of the victims' mother—that she was angry with him for bringing his daughter to take over his lawn business and wanted him convicted—would have been presented to the jury (*Id.* at 661). Cruz-Hernandez contends that he was deprived of the right to confront and cross-examine the victims' mother and denied the ability to call a bank official and his nephew as witnesses in his defense. (*Id.* at 661–62). He asserts that he was unable to show the jury that there was an evil scheme to put him, and keep him in jail, so the victims' mother could steal the $4,500 and deprive him of money and property. (*Id.*) The post-conviction court denied the claim (*Id.* at 575), and on collateral appeal, the Second District Court of Appeal affirmed the denial with a silent affirmance.

Under the circumstances, a fair-minded jurist could conclude counsel's actions relative to the proposed witnesses satisfied *Strickland.* Failure to impeach a key witness may amount to ineffective assistance of counsel, warranting relief. *Tyler v. State,* 793 So. 2d 137, 144 (Fla. 2d DCA 2001). However, there is no ineffective assistance where defense counsel decides not to impeach a witness over inconsequential matters. *See, e.g., Campbell v. United States*, 364 F.3d 727, 735 (6th Cir. 2004); *Allen v. Woodford*, 395

---

[5]   At the start of the evidentiary hearing, Cruz-Hernandez advised that he wanted to discharge his appointed post-conviction counsel and either permit him time to hire private counsel or for the court to appoint what would be his fourth post-conviction counsel. At the conclusion of a *Nelson* hearing, the court determined that counsel was providing effective representation. (*See* Ex. 9 at 593–613). Cruz-Hernandez chose to discharge counsel, and the court held a *Faretta* hearing. (*See id.* at 613–618). Afterwards, Cruz-Hernandez was granted the opportunity to represent himself for the remainder of the hearing. (*See id.* at 618).

F.3d 979, 999 (9th Cir. 2005). The victims' mother admitted to taking the money; she hid nothing at trial. (*See* Doc. 9 at 35–36). Defense counsel characterized the withdrawal as theft in her closing argument, but bank records showed that she was an authorized signatory. (*See id.*). At the evidentiary hearing on this claim, Cruz-Hernandez did not object to the admission of the bank records that showed the victims' mother as an authorized signatory. (*See* Ex. 9 at 664). Yet, he erroneously maintains that his inability to present bank records and to call a bank employee at trial precluded him from putting before the jury his theory that the victims' mother had stolen the $4,500, and denied him his right to a fair trial.

Cruz-Hernandez fails to cite any clearly established federal law that the state court either ruled contrary to or unreasonably applied 28 U.S.C. § 2254(d)(1). "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, but [the U.S. Supreme Court] [has] also recognized that state and federal rule makers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (citations and internal quotations omitted). "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citation omitted). The post-conviction court's decision on Cruz-Hernandez's instant claim was objectively reasonable. The appellate court's affirmance is entitled to deference by this Court. Cruz-Hernandez fails to demonstrate the state court's

21

application of the *Strickland* standard was unreasonable. Therefore, Ground Five is denied as meritless.

## IV.  Conclusion

1. Armando Cruz-Hernandez's petition for writ of habeas corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Cruz-Hernandez and to **CLOSE** this case.

2. Cruz-Hernandez is not entitled to a certificate of appealability  ("COA"). Under Section 2253(c)(1), a prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. Instead, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Cruz-Hernandez must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Cruz-Hernandez has not made the requisite showing. Finally, because Cruz-Hernandez is not entitled to a certificate of appealability, he has no right to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on May 26, 2026.

Charlene Edwards Honeywell
United States District Judge

**Copies to:** *Pro se* Petitioner and Counsel of record

22